# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware series limited liability company; and MSPA CLAIMS 1, LLC, a Florida limited liability company, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 1:19-cv-21607 |
| v. | ) ) The Hon. Edward S. Kiel |
| ABBOTT LABORATORIES, an Illinois corporation, ABBOTT DIABETES CARE, INC., a Delaware corporation; and ABBOTT DIABETES CARE SALES CORP., a Delaware corporation | ) Magistrate Judge J. Ann Marie Donio ) ) Hearing Date: January 28, 2025 ) Time: 2:00 p.m. ) ) |
| Defendants, | ) ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SANCTIONS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................... iv

BACKGROUND .......................................................................... 3

    A.  MSP's Claims Rest Solely On The Assignors' Information. .................................................................................. 3

    B.  MSP Serially Missed Deadlines In Violation Of Rule 16 After It Chose To Change e-Discovery Vendors Mid-Litigation. .......................................................................... 6

        1.  MSP failed to meet the May 31, 2024 Deadline. ...................... 7

        2.  MSP failed to meet the June 14, 2024 Deadline. ...................... 8

        3.  MSP failed to meet the September 13, 2024 Deadline. ........... 10

        4.  MSP failed to meet the November 20 and 25, 2024 Deadlines. ................................................................ 13

    C.  MSP Remains In Violation Of The Court's Orders. ...................... 14

ARGUMENT .............................................................................. 15

    A.  Legal Standard ............................................................ 15

    B.  Factor 1: MSP Is Responsible For Its Own Violation Of The Court's Orders And Its Assignors' Discovery Non-Compliance. ............................................................... 17

    C.  Factor 2: MSP's Discovery Non-Compliance Prejudices Abbott. ...................................................................... 21

    D.  Factor 3: MSP's History Of Dilatoriness Is Beyond Dispute. ...................................................................... 24

    E.  Factor 4: MSP's Discovery Misconduct Has Been Willful And In Bad Faith. .......................................................... 26

    F.  Factor 5: Sanctions Other Than Dismissal Would Be Ineffective. ................................................................. 29

G. Factor 6: MSP Has Not Produced Documents Showing That Any Of The Assignors' Claims Have Merit. ......................... 30

CONCLUSION ............................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Trustees of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863

(3d Cir. 1994) ........................................................................................ 21, 24

*Agabiti v. Home Depot Corp.*, 2015 WL 7313862 (D.N.J. Nov. 20, 2015) ............22

*Aronson v. Buy4Less Esales, Ltd.*, 2013 WL 5817070 (D.N.J. Oct. 11, 2013) .......31

*Barney v. Gloucester Twp. Police Dep't*, 2020 WL 6216948

(D.N.J. June 27, 2020) ...............................................................................24

*Chiarulli v. Taylor*, 2010 WL 1371944 (D.N.J. Mar. 31, 2010)

(Donio, J.) ................................................................................ 17, 21, 22, 27

*Coco v. 561 Summit Realty, LLC*, 2018 WL 6838760

(D.N.J. Oct. 9, 2018) .................................................................................17

*Cross v. Adams*, 2013 WL 1719088 (D.N.J. Apr. 19, 2013) ...................................26

*Dun and Bradstreet Corp. v. BizConnect Inc.*, 2024 WL 1007844

(D.N.J. Feb. 27, 2024) (Kiel, J.) ................................................................ 16, 19, 21

*Forchion v. Parrey*, 2021 WL 1390359 (D.N.J. Apr. 13, 2021) ..................... 26, 29

*Gibson v. Coburn*, 2017 WL 6820145 (D.N.J. Dec. 18, 2017) ..............................16

*Hayes v. Nestor*, 2013 WL 5176703 (D.N.J. Sept. 12, 2013) (Donio, J) ...............16

*Hernandez v. Kaplan*, 2014 WL 197916 (D.N.J. Jan. 13, 2014) ...................... 29, 30

*Hicks v. Feeney*, 850 F.2d 152 (3d Cir. 1988) ........................................................17

*MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2022 WL 1690151
(C.D. Cal. May 25, 2022) ..........................................................................20

*MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2019 WL 1976454
(C.D. Cal. Mar. 28, 2019) .........................................................................25

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 6311987
(C.D. Ill. Nov. 25, 2019) ...........................................................................25

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869
(7th Cir. 2021) ..........................................................................................20

*MSP Recovery Claims, Series LLC et al v. Markel Am. Ins. Co.*, 1:20-cv-24063-
AMC (S.D. Fla. June 10, 2021) .................................................................25

*MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091
(S.D.N.Y. Mar. 26, 2021) ..........................................................................20

*MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, 2019 WL
4222654 (N.D.N.Y. Sept. 5, 2019) ...........................................................20

*MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998
(S.D. Fla. Oct. 19, 2018) ...........................................................................20

*MSP Recovery Claims, Series LLC v. Westfield Ins. Co.*, 1:17-cv-23961-CMA
(S.D. Fla. Mar. 16, 2021) ..........................................................................25

*MSP Recovery Claims, Series, LLC et al. v. Sanofi Aventis U.S. LLC et al.*, 2:18-
cv-2211-BRM-LHG (D.N.J.) ......................................................... passim

*Naik v. Bos. Consulting Grp.*, 2017 WL 424902 (D.N.J. Jan. 12, 2017) ......... 26, 29

*November Third Termination Assoc. v. Hoffman-La Roche, Inc.*, 2005 WL

    8176159, (D.N.J. Apr. 27, 2005) ........................................................30

*P.R. v. Bridgeton Bd. of Educ.*, 207 F. App'x 235 (3d Cir. 2006)...........................17

*Pak-Vak Sys. v. T&S Prod.*, 2006 WL 2844149 (D.N.J. Sept. 6, 2006).................23

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) ........... 3, 17, 24

*Rieu v. RVT Wrangleboro Consumer Square, LLC*, 2020 WL 6144731

(D.N.J. Oct. 20, 2020)................................................................27

*Solomon v. Atlantic City Hilton Casino and Resort*, 2013 WL 3070884

(D.N.J. Apr. 8, 2013) (Donio, J.) ................................................... passim

*Vittas v. Brooks Bros. Inc., Grp.*, 2017 WL 6316633  (D.N.J. Dec. 11, 2017).......17

*W. Coast Quartz Corp. v. M.E.C. Tech, Inc.*, 2017 WL 1944197

(D.N.J. May 9, 2017) ...............................................................31

*Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003)................................ 21, 28

*Zanes v. Flagship Resort Dev., LLC*, 2012 WL 602778 (D.N.J. Jan. 30, 2012)... 29, 30

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 16 ....................................................3, 16

Federal Rule of Civil Procedure 37 ...................................................3, 16

MSP (MSP Recovery Claims, Series LLC and MSPA Claims 1, LLC) has violated multiple Court orders while disregarding the last four deadlines to substantially complete its document productions. As this Court has made clear, MSP was required to demonstrate good cause, including by submitting an affidavit in support, to extend these deadlines. *See* Oct. 22, 2024 Order, ECF No. 267 ¶ 3. After MSP repeatedly violated that directive, the Court again told MSP that it would "give you [MSP] a date certain [November 25] and indicate that if you fail to meet it with good cause, you have to demonstrate the good cause, or you'd be subject to sanctions, which could include dismissing the case." Ex. 1, Oct. 22, 2024 Hr'g Tr. ("Oct. 22 Tr.") at 11:25-12:3. MSP knew the consequences for non-compliance, yet continued to ignore the Court's orders: it did not file a request to extend the substantial completion deadline, submit an affidavit, or timely complete its document production. Its productions remain incomplete today.

MSP alone is responsible for these violations. Days before the May 31, 2024 substantial completion deadline, MSP decided to change e-discovery vendors. Rather than take steps to ensure it would still meet the Court's deadlines, such as isolating documents responsive to this litigation prior to the transition, MSP disregarded that deadline. Instead of meeting its obligations, MSP repeatedly engaged in self-help, claiming that it would be substantially complete by a date certain, only to miss its own deadlines and then move the goal posts. On May 24,

2024, for example, MSP told the Court that it would be substantially complete within "roughly 39 business days" of its data transfer, *i.e.*, by July 31. *See* May 28, 2024 Letter from Plaintiff, ECF No. 234. MSP missed that self-declared deadline. Less than a month later, MSP told the Court that it would be substantially complete by September 27. *See* June 21, 2024 Letter from Plaintiff, ECF No. 240; *see also* Ex. 2, July 19, 2024 Hr'g Tr. ("July 19 Tr.") at 6:21–7:11 ("[I]n an abundance of caution … we asked for September 27th. And we are on line or on track to meet that date."). MSP missed that deadline too. These are just examples; the long history of MSP's intransigence is detailed more fully below. MSP violated its representations and this Court's orders again and again, believing it had impunity to do so.

The only sanction that can remedy MSP's pattern of discovery violations is to dismiss its claims on behalf of the five third-party health insurance payers ("Assignors") for whom MSP failed to substantially complete its document productions by November 25, 2024.[1] *See Solomon v. Atlantic City Hilton Casino*

---

[1] Those five Assignors are: (1) EmblemHealth Services Company, LLC/ConnectiCare, Inc. ; (2) Fallon Community Health Plans, Inc.; (3) Network Health, Inc.; (4) SummaCare, Inc.; and (5) Health Alliance Medical Plans, Inc. ("HEAL"). MSP also violated the Court's orders with respect to the sixth remaining Assignor, Physician Access Urgent Care Group ("PAUCG"). While Abbott believes the Court would be entirely justified to dismiss the claims of PAUCG, MSP produced documents from the parties' agreed-upon PAUCG custodians less than 48 hours after the November 25 deadline. Abbott is in the process of reviewing those documents to confirm whether this Assignor is substantially complete and is not pursuing dismissal of PAUCG at this time.

*and Resort*, 2013 WL 3070884, at *3 (D.N.J. Apr. 8, 2013) (Donio, J.). All of the factors under *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), support this remedy: (1) MSP's delays are entirely self-inflicted; (2) Abbott has suffered prejudice from MSP's serial non-compliance, which has impeded Abbott's ability to defend itself while also significantly increasing its costs; (3) MSP has a clear track record of dilatoriness; (4) MSP's repeated false assurances of compliance illustrate its conduct was willful and in bad faith; (5) no other sanction besides dismissal would suffice considering the Court has already stayed the matter and MSP continues to violate the Court's orders; and (6) MSP's claims lack merit. Under Federal Rules of Civil Procedure 16(f)(1)(c) and 37(b)(2)(A)(v), the Court should bar MSP from pursuing claims on behalf of each of these five Assignors: (1) EmblemHealth Services Company, LLC and ConnectiCare, Inc.; (2) Fallon Community Health Plan, Inc.; (3) Network Health, Inc.; (4) SummaCare, Inc.; and (5) Health Alliance Medical Plans, Inc. ("HEAL") and award reasonable attorneys' fees and costs incurred by Abbott related to issues raised in this motion.

## BACKGROUND

### A.    MSP's Claims Rest Solely On The Assignors' Information.

MSP is the purported assignee of Assignors that allegedly provide health insurance coverage for Abbott's blood glucose test strips ("Test Strips"). April 24, 2023 Amended Complaint, ECF No. 173 ¶ 10. MSP has no personal knowledge

about any of the substantive allegations in its Amended Complaint, and instead "bring[s] this action" "[o]n behalf of [its] Assignors." *Id.* As a result, every complaint allegation is framed in terms of the alleged knowledge of, decisions by, and injury to "Plaintiffs' Assignors." For example, MSP pled that "*Plaintiffs' Assignors* rightfully relied on [ ] fraudulent list prices," that *Plaintiffs'* "*Assignors* paid for the Test Strips based on the inflated [wholesale acquisition costs]," and that "*Plaintiffs' Assignors* paid more for Test Strips than they otherwise would have paid." *Id.* ¶¶ 86, 114, 173 (emphases added).

Without providing discovery from each Assignor, MSP cannot prove its claims on behalf of that Assignor and Abbott cannot defend against those claims. That is why this Court ordered MSP to "produce any documents and information as to each Assignor to which Defendants would be entitled to under the Federal Rules of Civil Procedure to the same extent as if each Assignor brought this action themselves." Oct. 17, 2022 Opinion, ECF No. 137 at 9.

MSP originally filed suit on behalf of nearly 50 Assignors. But, as Abbott has stated throughout this litigation, the Assignors were highly unlikely to participate in discovery. *See* May 13, 2022 Defendants' Motion to Strike Claims and Compel Discovery, ECF No. 131-1 at 5-6. Most of the same Assignors at issue in this motion were involved in MSP's companion Insulin Litigation, and MSP engaged in similar serial discovery violations where the Assignors failed to participate. *See MSP*

*Recovery Claims, Series, LLC et al. v. Sanofi Aventis U.S. LLC et al.*, 2:18-cv-2211-BRM-LHG (D.N.J.) ("*Sanofi Aventis*"), ECF Nos. 275; 316, 438.

Recognizing the real possibility that MSP and its Assignors would disavow their discovery obligations, Judge Goodman delayed plenary discovery by requiring MSP to identify its Assignors and confirm they would honor their obligations. Nov. 16, 2021 Scheduling Order, ECF No. 106. This "Phase One" discovery was limited to "the identity, nature, and role of the plaintiffs' assignors and the assignments, the identity and role of 'upstream' entities with whom the assignors contract, and the risk sharing agreements entered into by the assignors." *Id.* at ¶ 1. After multiple Assignors failed to provide Phase One discovery, Judge Goodman ordered MSP's counsel "to email all assignors to confirm their willingness and ability to participate in this litigation by no later than February 14, 2022." Feb. 18, 2022 Scheduling Order, ECF No. 120 ¶ 1. The vast majority of the Assignors failed to respond to that email or declined to participate. *See* May 13, 2022 Defendants' Motion to Strike Claims and Compel Discovery, ECF No. 131-1 at 8. During Phase One, MSP dropped 31 Assignors, while also repeatedly ignoring its obligations for the remaining Assignors. *See, e.g.*, Nov. 28, 2022 Joint Status Letter, ECF No. 142 at 2-3 (summarizing MSP's delays during Phase One discovery); *see also* Feb. 8, 2023 Plaintiffs' Response to Abbott's Status Report, ECF No. 150 at 2 (noting that MSP dropped 31 out of 49 Assignors). Today, only six Assignors remain.

"Phase Two"—plenary discovery—has been no different. In this phase, MSP should be producing discovery on behalf of all of the remaining Assignors related to, among other topics,

> (1) what statements MSP alleges to be fraudulent; (2) whether the assignors actually relied on those statements; (3) the assignors' knowledge of how Defendants' list prices are set and whether they include rebates; (4) the assignors' knowledge of how rebates for diabetes Test Strips are negotiated and set; (5) whether the assignors benefited from the rebates they did receive; and (6) whether the assignors did or did not receive the 'good deal' that MSP alleges other purchasers of Test Strips received.

Dec. 6, 2024 Joint Status Letter, ECF No. 276 at 3. Abbott has even identified for MSP the specific kinds of documents that contain this information. *Id.* at 3. Yet, MSP has produced almost none of these documents for the six remaining Assignors, despite *seven* extensions to the substantial completion deadline.[2]

## B. MSP Serially Missed Deadlines In Violation Of Rule 16 After It Chose To Change e-Discovery Vendors Mid-Litigation.

Following the ruling on Abbott's motion to dismiss MSP's amended complaint and reassignment to Your Honor, the Court set the substantial completion deadline for May 31, 2024. ECF No. 218. In advance of the May 31 deadline, the

---

[2] The original substantial completion deadline was August 31, 2022. ECF No. 120 at 2. Since then, the deadline was moved to the following dates: (1) February 28, 2023, ECF No 135 at 1; (2) November 30, 2023, ECF No. 175 at 2; (3) February 15, 2024, ECF No. 189; (4) May 31, 2024, ECF No. 204; (5) June 14, 2024, ECF No. 233; (6) September 13, 2024, ECF No. 250 ¶ 1; and (7) November 25, 2024, ECF No. 267 ¶ 3. MSP then unilaterally proffered December 6, 2024 as its substantial completion deadline. Dec. 6, 2024 Joint Status Letter, ECF No. 275. MSP is still not substantially complete as of December 20, 2024.

Court warned MSP that it was "not going to change that deadline. That deadline is pretty much set in stone." Ex. 3, April 18, 2024 Hr'g Tr. ("Apr. 18 Tr.") at 29:8-11. The Court also made clear that it "will consider altering dates if [MSP provides] a ***detailed letter saying what's been done to date, why you can't meet the deadline despite diligent efforts***. And then [the Court will] revisit it. But if it's just needing more time, that's not going to fly, okay?" *Id.* at 31:24–32:5 (emphasis added). MSP has not once followed that directive.

### 1.    MSP failed to meet the May 31, 2024 Deadline.

On May 17, 2024, the parties filed a joint status letter where MSP stated that it was "cognizant of the upcoming May 31, 2024 substantial completion deadline" but that "MSP ha[d] serious concerns that it [would] be able to hit that deadline." May 17, 2024 Joint Status Letter, ECF No. 227 at 1-2. At the May 22 status conference, Abbott confirmed that it was prepared to meet the May 31 substantial completion deadline. Ex. 4, May 22, 2024 Hr'g Tr. ("May 22 Tr.") at 5:22-25. MSP, in contrast, revealed for the first time that it had decided to transition to a new ESI vendor less than 10 days before the Court's upcoming May 31 deadline and did not "have a timeline for the boarding process." *Id.* at 6:16-22 ("I learned last night that my client is transitioning to a new ESI vendor, and so they are in the process -- they've identified a new vendor and are in the process of getting all of the files and everything else in this case and some others over to the new vendor, and we're going

7

to be utilizing that new vendor going forward.").

The Court questioned why MSP was making this change in "the middle of a court order," stating, "[i]t's a little unusual for a party to make a change when they have to comply with a court order. That's an issue." *Id.* at 12:19-23. The Court then gave MSP a short extension of the substantial completion deadline from May 31 to June 14, but ordered MSP to file a letter by May 28 "providing more detailed information as to the impact, if any, on meeting the extended substantial completion date in connection with the transition to a new vendor." May 22, 2024 Order, ECF No. 233 ¶ 1. The Court required MSP to specify in this letter "the actual timeline for the new vendor to obtain the data that is already loaded in the servers of the current vendor." *Id.*

MSP filed a letter on May 28 representing that it would take "roughly thirty-nine (39) business days to complete production once the documents have been transferred over by [its vendor,] SIFT," which it represented would occur "no later than Wednesday of next week (*i.e.*, June 5, 2024)." May 28, 2024 Letter from MSP, ECF No. 234 at 2. Based on this timeline, MSP represented to the Court and Abbott that it would substantially complete its production by no later than July 31.

### 2. MSP failed to meet the June 14, 2024 Deadline.

MSP ignored the Court's June 14, 2024 substantial completion deadline. It also ignored the Court's April directive that if it wanted an extension of that deadline,

it needed to submit a "detailed letter" setting forth what had been already produced and why it could not meet this deadline "despite diligent efforts." Ex. 3, Apr. 18 Tr. at 31:24–32:5. Instead, at the June 14 status conference—nine days after the June 5 ESI transfer was supposed to happen—MSP admitted that the ESI transfer still had not occurred and it was "possible" that MSP would receive the transfer by the end of the following week, on June 21. Ex. 5, June 14, 2024 Hr'g Tr. ("June 14 Tr.") at 6:10-11. Abbott, for its part, confirmed that its productions were substantially complete. *Id.* at 9:15-22. The Court reiterated that MSP's non-compliance was a problem of MSP's own making. *Id.* at 13:6-10 ("[I]t wasn't like there was a massive thing not within the control of the plaintiff that caused this delay."). The Court also stated, "I can't understand why you changed data [vendors]. There must be a reason to change the manager and data vendor in the middle of a massive litigation." *Id.* at 11:3-6. The Court then ordered MSP to confirm by June 21 the date that it would substantially complete production of ESI. June 14, 2024 Order, ECF No. 239.

On June 21, MSP filed a letter indicating that it would now need an additional ***three months*** to substantially complete its document productions, asking for a deadline "on or before Friday, September 27, 2024." June 21, 2024 Letter from MSP, ECF No. 240 at 2. Abbott requested that the Court give MSP until August 16, 2024, noting that MSP offered no good cause to justify such an extended deadline, especially given its prior statement that it should only need 39 business days. July 3,

9

2024 Abbott Letter, ECF No. 245. At the July 19, 2024 status hearing, MSP doubled

down that, if the Court granted its request for another extended deadline, MSP would

substantially complete its production by September 27, "if not earlier":

> So, I believe that it's still reasonable [to move the substantial
> completion deadline to] the September 27th date. The defendants
> responded, in their ECF entry number 245 saying an ask of August 16th.
> I can tell you that, given what we know from our current vendor who
> has worked on some of our other MSP files, that that date would be
> unlikely, so we want to avoid having to come back and ask the Court
> for another extension. ***We'd rather do one final date that everyone can
> agree to and know that we will meet it by that date, if not earlier.*** And,
> obviously, ***our intention is to get it out as soon as we can***, and if we do
> it before that, fantastic, but I—in an abundance of caution, that's why
> we asked for September 27th. ***And we are on line or on track to meet
> that date if the Court grants it.***

Ex. 2, July 19 Tr. at 6:23–7:11 (emphases added).

The Court ultimately set September 13 as the new deadline, and in its Order

doing so, the Court warned that it "will not grant any further extension of time absent

good cause and submission of affidavits setting forth Plaintiffs' efforts to comply

with this deadline." July 22, 2024 Order, ECF No. 250 ¶ 1; *see also* Ex. 2, July 19

Tr. at 25:5-9 ("[D]on't expect to move that deadline, absent good cause properly

requested with, in addition, affidavits to support why this deadline can't be met,

because I think it can, based on the time frames that are set forth in the various

letters.").

### 3. MSP failed to meet the September 13, 2024 Deadline.

The September 13 substantial completion deadline came and went, with MSP

making only one additional production during that time period. Again, MSP did not formally request an extension of the Court's deadline, submit "affidavits setting forth Plaintiffs' efforts to comply with this deadline," or demonstrate "good cause" for a further extension. July 22, 2024 Order, ECF No. 250. Instead, on August 26, all MSP stated was, "given the challenges that it [] encountered as part of its data transfer, it believe[d] it [would] need additional time beyond September 13 to produce certain documents." Aug. 26, 2024 Joint Status Letter, ECF No. 256 at 1.

Things had not changed by the October 22 status conference. MSP still was not substantially complete and still had not provided a single affidavit establishing good cause. Ex. 1, Oct. 22 Tr. at 4:23–5:1, 9:20–10:4. After hearing MSP's latest excuse for missing another deadline, the Court asked MSP, "Where's everything you said under some kind of certification or affidavit?" *Id.* at 12:3-6. MSP had no answer. But the Court gave MSP one final chance with another explicit warning: "I am inclined to give you a date certain and indicate that *if you fail to meet it with good cause, you have to demonstrate the good cause, or you'd be subject to sanctions, which could include dismissing the case*." *Id.* at 11:25-12:3 (emphasis added)).

In an effort to avoid further prejudice to Abbott from MSP's continued failure to meet deadlines, the Court stayed the case except for MSP's substantial completion deadline. *Id.* at 19:25–20:9. The Court again warned that if MSP continued down this path, the Court may "*dismiss the case for failure to prosecute or failure to*

11

**comply with a court order**." *Id.* at 22:21-25 (emphasis added).

Critically, the Court again ordered MSP that "if you can't make [the substantial completion deadline] in 30 days, you have to send me an affidavit telling me why it hasn't been done to date. And what the good cause is to be giving you yet another extension of the substantial completion deadline." *Id.* at 21:25-22:3 and 29:15-18 ("And any requests to exten[d] that time period should be made by written application supported by an affidavit, with a detailed analysis — a detailed summary of what's been produced to date and what is left outstanding."). The Court memorialized this directive in the order that followed the conference:

> By no later than **November 25, 2024** Plaintiffs shall substantially complete production of ESI, as set forth on the record on October 22, 2024. If Plaintiffs will be unable to complete substantial production of ESI by November 25, 2024, then by no later than **November 20, 2024**, Plaintiffs shall file a written application demonstrating good cause for an extension of time pursuant to Federal Rule of Civil Procedure 16(b)(4), which application shall include submission of affidavits setting forth Plaintiffs' efforts to comply with the November 25, 2024 deadline, as set forth on the record on October 22, 2024."

Oct. 22, 2024 Order, ECF No. 267 ¶¶ 2-3 (emphasis in original).

This final November 25 deadline was not optional. The Court warned MSP that "Plaintiffs are to substantially complete their production of ESI by November 25th" and that the Court would not be "stalling or stopping that November 25 deadline." Ex. 6, Nov. 13, 2024 Hr'g Tr. ("Nov. 13 Tr.") at 17:18-22. MSP confirmed at the October 22 hearing that it "understood Your Honor's

instructions." *Id.* at 17:22–18:8.

### 4.    MSP failed to meet the November 20 and 25, 2024 Deadlines.

Once again, MSP violated the Court's orders. MSP did not request an extension of the substantial completion deadline by November 20, submit an affidavit demonstrating good faith, or substantially complete its document production by November 25. Instead, on November 25, MSP declared that it was substantially complete for only one Assignor, HEAL—effectively conceding that it was *not* substantially complete for any other Assignors. Nov. 25, 2024 Letter from MSP, ECF No. 275 at 1. And despite MSP's assertion that its document productions for HEAL were substantially complete, MSP had produced less than 250 documents for HEAL during Phase Two, failed to produce documents from ***any*** of the HEAL custodians that the parties had agreed upon, and had not even searched for responsive emails from HEAL. *See* Ex. 7, Dec. 9, 2024 Hr'g Tr. ("Dec. 9 Tr.") at 10:20-23 ("The only thing that remains now are emails for remaining assignors that we have.").

Despite these failures, MSP then tried to unilaterally grant itself an extension until December 6, 2024 to substantially complete production for "all remaining Assignors." *See* Nov. 25, 2024 Letter from MSP, ECF No. 275. But even by December 6, MSP could only assert that it had substantially completed production for one additional Assignor, PAUCG, and that it was deficient for the four other

Assignors: (1) Emblem/ConnectiCare; (2) Fallon; (3) Network Health; and (4) SummaCare. *See* Dec. 6, 2024 Joint Status Letter, ECF No. 276 at 1. MSP reiterated its claim that its approximately 250-document, email-free production for HEAL qualified as substantially complete. *See* Ex. 7, Dec. 9 Tr. at 10:20-23.

### C.    MSP Remains In Violation Of The Court's Orders.

The Court has not extended the November 25 substantial completion deadline. At the December 9 status conference, the Court asked MSP to explain "why, when the Court puts in the order that you need to file a written extension if you're not going to meet a deadline that [the Court] didn't receive a written extension request as set forth in [the Court's] orders—prior orders?" Ex. 7, Dec. 9 Tr. at 4:13-17. In response, MSP conceded that it "had no idea" if it "was going to be able to produce the documents, how [it] was going to be able to get access to them. It wasn't until just last week [i.e., the week of December 2] that [MSP was] able to get [] a production schedule, an outline for the remaining assignors," and it did not want to "ask for an extension, just without end." *Id.* at 5:6-12. The Court responded that it "can't accept that response because you can't just disregard a court order…. So just ignoring the court order is a problem." *Id.* at 6:14-24.

The Court then granted Abbott leave to file this motion for sanctions:

All right. Well, let me -- let me just address it this way, and it's a discovery order, you have to comply with the order. You never made an application for a good faith extension, you did not submit an affidavit. It was clear from my order what needed to be done if you

14

weren't going to meet the deadline, and this is after repeated extensions by the Court. And so I'm going to grant leave to the defendants to file a motion to strike the complaint with respect to whichever portions of the substantial completion hasn't been done, and with maybe the assignors are going to drop their claims, I don't know.

*Id.* at 12:5-16; Dec. 9, 2024 Order, ECF No. 277 ¶ 1.

## ARGUMENT

Time and again, MSP has shown that it will not comply with this Court's orders. The Court has repeatedly set deadlines, and MSP has repeatedly ignored them. The Court has directed MSP how to seek extensions of the Court's deadlines, and MSP has disregarded those instructions, too. The Court has ordered MSP to provide affidavits to justify its behavior, and MSP has never complied. MSP is still nowhere close to substantial completion, despite Abbott repeatedly seeking the Court's intervention to ensure that the case proceeds. When confronted about these failures, MSP has strung the Court (and Abbott) along with false promises that compliance is just around the corner.

This Court has been beyond patient with MSP's non-compliance. At this juncture, the only sanction that can remedy MSP's repeated violations of the Court's orders is to dismiss all claims brought on behalf of the five Assignors that were not substantially complete by the final November 25, 2024 deadline.

### A.    Legal Standard

Together, Rules 16 and 37 "authorize the imposition of sanctions for failure to comply with a court order and for failure to respond to discovery request." *Dun*

15

*and Bradstreet Corp. v. BizConnect Inc.,* 2024 WL 1007844, at *3 (D.N.J. Feb. 27, 2024) (Kiel, J.). Rule 16(f)(1)(c) provides that "a court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney … fails to obey a scheduling or other pretrial order." *Hayes v. Nestor*, 2013 WL 5176703, at *3 (D.N.J. Sept. 12, 2013) (Donio, J). And Rule 37 "covers sanctions for failure to make discovery." *Solomon*, 2013 WL 3070884, at *3. In particular, Rule 37 provides that "[i]f a party … fails to obey an order to provide or permit discovery, "the court … may issue further just orders" including "dismissing the action or proceeding in whole or in part." *Hayes*, 2013 WL 5176703, at *3; *see also Gibson v. Coburn*, 2017 WL 6820145, at *1 (D.N.J. Dec. 18, 2017) (Rule 16 "expressly incorporates the menu of sanctions available in Rule 37(b)(2)(A)(ii)-(vii), among others, for dismissal following a failure to comply with a discovery order."). The Court may also award attorneys' fees as a sanction. *See* Fed R. Civ. P. 16(f)(2) and 37(b)(2)(C).

The Third Circuit has identified six factors to assess whether dismissal is an appropriate sanction:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

16

*Poulis*, 747 F.2d at 868. "*Poulis* requires the District Court only to balance the six factors and does not set one factor forth as determinative." *Chiarulli v. Taylor*, 2010 WL 1371944, at *4 (D.N.J. Mar. 31, 2010) (Donio, J.). "[E]ach [*Poulis*] factor need not be satisfied for the District Court to dismiss a complaint." *Solomon*, 2013 WL 3070884, at *6. Courts have repeatedly ordered dismissal under Rule 37 where only three of the six factors weighed in favor of dismissal. *E.g.*, *Vittas v. Brooks Bros. Inc., Grp.*, 2017 WL 6316633, at *4 (D.N.J. Dec. 11, 2017); *P.R. v. Bridgeton Bd. of Educ.*, 207 F. App'x 235, 237 (3d Cir. 2006) (affirming involuntary dismissal "for failure to comply with court orders" where three of six *Poulis* factors were met); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988) (affirming dismissal where three of six *Poulis* factors were satisfied); *Coco v. 561 Summit Realty, LLC*, 2018 WL 6838760, at *2 (D.N.J. Oct. 9, 2018) (dismissing claims where four of six *Poulis* factors met), *R&R adopted*, 2018 WL 6838759 (D.N.J. Oct. 31, 2018).

Here, ***every*** *Poulis* factor supports dismissing the claims of the Assignors for whom MSP failed to meet the November 25 substantial completion deadline.

### B.    Factor 1: MSP Is Responsible For Its Own Violation Of The Court's Orders And Its Assignors' Discovery Non-Compliance.

MSP's personal responsibility weighs heavily in favor of issuing sanctions. More than two years ago, the Court made clear that "Plaintiffs have an obligation [to] produce any documents and information as to each Assignor to which Defendants would be entitled under the [FRCP] to the same extent as if each

Assignor brought this action themselves." Oct. 17, 2022 Opinion and Order, ECF

No. 137 at 8. MSP has failed to meet that obligation.

There is no dispute that MSP alone made the unilateral business decision to

change e-discovery vendors the week before a pending substantial completion

deadline. According to MSP's counsel, MSP never consulted its counsel before

making this decision and only alerted them the night before a status hearing many

weeks after the substantial completion deadline was set. Ex. 4, May 22 Tr. at 6:16-

22 (MSP: "I learned last night that my client is transitioning to a new ESI

vendor…"). The Court rightly expressed concern at MSP's decision. *See id.* at 12:19-

23 (the Court: "I'm taking all this at face value. I don't know why the change. I mean

it was a business decision? You're in the middle of a court order."); Ex. 5, June 14

Tr. at 13:6-10 (the Court: "[I]t wasn't like there was a massive thing not within the

control of the plaintiff that caused this delay."). MSP's counsel admitted that MSP

alone made the decision to change ESI vendors. *Id.* at 14:13-15 ("Obviously, these

are extenuating circumstances, ***decisions made by our client, that are outside the***

***control of counsel***. And it affects not just this case, but as I said, multiple cases."

(emphasis added)). MSP was also clear in response to the Court's questions that it

was MSP's unilateral decision change eDiscovery vendors, and that this decision

was not related to MSP's litigation strategy. *See* Ex. 1, Oct. 22 Tr. at 16:23–17:2 (the

Court "The migration of the data had nothing to do with this litigation, correct? A

business decision for whatever way in which the plaintiff maintained its ESI, correct?" MSP: "Correct. Correct, Your Honor.") and 18:1-5 (the Court: "But, it has nothing to do with the fact that the defense made a second request, and it has everything to do with the fact that your client made a business decision, despite this litigation, to do a migration of its data. Am I correct?" MSP: "Yes, Your Honor.").

In *Dun and Bradstreet Corp. v. BizConnect Inc.*, the court found that the first *Poulis* factor weighed in favor of sanctions because the counterclaimants had "repeatedly represented to their counsel that they are in the process of filing [] for dissolution or bankruptcy, which would result in a stay of this litigation and [the counterclaimants'] discovery obligations. … However [the counterclaimants] have not filed for bankruptcy protection and continue to use the potential for bankruptcy to excuse their failure to comply with discovery obligations and the Court's orders." 2024 WL 1007844, at *4. This factor weighed in favor of dismissal because the counterclaimants were "represented by competent counsel and there is no indication that [the party is] ignorant of the current situation." *Id.* at *4. The facts here establish an even stronger case for MSP's personal responsibility. Unlike a potential dissolution or bankruptcy, MSP's decision to change discovery vendors was completely within its control.

Moreover, MSP is entirely responsible for its false assurances that it would meet deadlines and for its decisions not to follow the Court's mandatory process for

justifying any extensions. This is MSP's modus operandi, as ***several*** courts have criticized MSP's persistent pattern of discovery non-compliance.[3] Here, MSP followed that same pattern: it simply blew the deadlines and ignored the Court's orders, repeatedly trying to give itself more time *without* seeking the Court's leave. It did so on June 13,[4] August 26,[5] November 25,[6] and December 6.[7]

After months of empty promises, MSP admitted on December 9 that it "had no idea" if it "was going to be able to produce the documents, how [it] was going to be able to get access to them." Ex. 7, Dec. 9 Tr. at 5:6-12. The same pattern occurred

---

[3] *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2022 WL 1690151, at *5 n.4 (C.D. Cal. May 25, 2022) ("Courts across the country have expressed frustration with plaintiffs' approach to litigating these claims"); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *15 (S.D.N.Y. Mar. 26, 2021) ("As far as the Court can tell from what it includes in the [complaint], [MSP] has done absolutely nothing to obtain relevant information from its assignors."); *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018) (remarking on MSP's "ever-shifting allegations" and "play[ing] fast and loose with facts, corporate entities, and adverse judicial rulings"); *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *7 (N.D.N.Y. Sept. 5, 2019) (noting that MSP's "history of untruthfulness is well-documented"); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021) (noting the court's "unmistakable impression that these debt collector plaintiffs [MSP] pull the litigation trigger before doing their homework").

[4] June 13 Joint Status Letter, ECF No. 237 at 1-2.

[5] Aug. 26, 2024 Joint Status Letter, ECF No. 256 at 1.

[6] Nov. 25, 2024 Letter from Plaintiffs, ECF No. 275 at 2.

[7] Dec. 6, 2024 Joint Status Letter, ECF No. 276 at 1.

in the Insulin Litigation:

> Despite discovery extensions, and despite assurances along the way from MSP that discovery as to these assignors was complete (or nearly so), this has not been the case. … [T]he Court later learned that several of the assignors were, in fact, then refusing to cooperate in production. This, in the Special Master's view, constitutes a failure of a party to meet its personal responsibility to cooperate in discovery.

*Sanofi Aventis*, 2:18-cv-2211-BRM-LHG, ECF No. 316 at 9. History is repeating itself here.

## C.    Factor 2: MSP's Discovery Non-Compliance Prejudices Abbott.

MSP's continued failure to meet Court-imposed deadlines materially prejudices Abbott. Prejudice "includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Solomon*, 2013 WL 3070884, at *4 (quoting *Adams v. Trustees of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994)); *see also Dun and Bradstreet Corp.*, 2024 WL 1007844, at *4 (same). It "does not mean 'irremediable harm,'" and "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Coco*, 2018 WL 6838760, at *2 (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003))*; see also Dun and Bradstreet Corp.*, 2024 WL 1007844, at *4 (same). "A finding of prejudice to the opposing party under *Poulis* weighs heavily in favor of dismissal." *Chiarulli*, 2010 WL 1371944, at *3.

First, MSP's failure to meet its discovery obligations means that Abbott

cannot properly prepare to take or defend depositions or defend itself in this litigation. The five Assignors that failed to substantially complete their productions by the November 25 deadline failed to produce "even basic information" related to the allegations in the Amended Complaint, making it "virtually impossible for Defendant[s] to prepare [their] defense." *Agabiti v. Home Depot Corp.*, 2015 WL 7313862, at *3 (D.N.J. Nov. 20, 2015) (ordering dismissal); *see also Chiarulli*, 2010 WL 1371944, at *3 ("A party may also be prejudiced if its 'ability to prepare effectively a full and complete trial strategy' is impeded"). Prior to the November 25 cutoff, none of these Assignors had produced:

- Key documents related to the Assignor's contractual agreements that would show the Assignor's knowledge of rebates and defeat MSP's theory of fraud. This category includes Assignor emails reflecting contract negotiations and exercises of their contractual rights, risk sharing agreements setting out the terms of payment responsibilities, and efforts to negotiate for higher rebates. Ex. 8, Defendants' Joint RFP Nos. 2, 4-8; Ex. 9, Abbott Fourth RFP Nos. 2-3.

- Key documents showing how much the Assignors received in rebates for Test Strips, such as Direct and Indirect Remuneration ("DIR") Reports the Assignors were federally required to submit to the Centers for Medicare & Medicaid ("CMS") that show they received and benefited from rebates. Ex. 8, Defendants' Joint First RFP Nos. 2, 6; Ex. 9, Abbott Fourth RFP Nos. 7-8.

- Documents showing how the Assignors used rebates or other discounts to benefit themselves, such as their finance, accounting, or other comparable documents reflecting the rebates related to Abbott's Test Strips. Ex. 9, Abbott Fourth RFP Nos. 7-8.

- Documents showing the Assignors' net costs related to Test Strips, such as the bids that the Assignors submitted to CMS that show the Assignors' estimated spending for the year and how much the federal government will reimburse the plans for their coverage. These bids constitute core discovery

necessary to refute MSP's alleged damages because these bids bear directly on whether MSP's Assignors were in fact "injured" or "defrauded" by Test Strip-related rebates. If the Assignors accounted for those rebates or changed Test Strip list prices in their bids to CMS or reported to CMS that they benefited from rebates, MSP's claims would necessarily fail. Ex. 9, Abbott Fourth RFP Nos. 3-4, 8.

- Documents showing that the Assignors exercised their contractual market check and audit rights—tools that allow the Assignors used to understand the pricing and competitive terms of their contracts and compare them to the marketplace. MSP alleges that its Assignors could not know whether they were receiving a "good deal" on their rebates, Amended Complaint, ECF No. 173 ¶ 148, but evidence of market checks refutes that allegation. Ex. 9, Abbott Fourth RFP Nos. 1, 5.

- Documents showing the Assignors' knowledge of and negotiation of rebates, rebate pass-through to their other contracting parties, and understanding about the meaning of the same pricing terms used by Abbott and other device and pharmaceutical manufacturers at issue in this litigation. Ex. 9, Abbott Fourth RFP Nos. 6-8.

These are just examples of the types of core discovery that MSP must produce for each Assignor. Depriving Abbott of this critical discovery prejudices Abbott under *Poulis*. *See Pak-Vak Sys. v. T&S Prod.*, 2006 WL 2844149, at *1 n.1 (D.N.J. Sept. 6, 2006) ("The prejudice to the defendant from the plaintiff's noncompliance is clear. The defendant is unable to fully investigate the plaintiff's claims and fully defend against them without its participation in discovery."). Meanwhile, because Abbott substantially completed its productions in June 2024, MSP has had a six-month head start to prepare for depositions and plan its trial strategy. Ex. 5, June 14 Tr. at 9:15-24.

Second, Abbott has incurred significant fees to try "to force compliance with

discovery." *Adams*, 29 F.3d at 874. "Under the second *Poulis* factor, the Court examines the prejudice to other parties caused by the delay, including considering whether the party's conduct has resulted in extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party." *Barney v. Gloucester Twp. Police Dep't*, 2020 WL 6216948, at *3 (D.N.J. June 27, 2020). Even after this Court stayed the case in an effort to minimize the ongoing prejudice from MSP's conduct. MSP's repeated non-compliance has forced Abbott to send multiple letters, draft multiple status reports, argue at multiple status conferences, and now pursue this sanctions motion. *Ware*, 322 F.3d at 223 (holding that "prejudice [] include[s] the burden that a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary"). As found in the Insulin Litigation, MSP's "serial noncompliance acts to prejudice the defense of this lawsuit." *Sanofi Aventis*, 2:18-cv-2211-BRM-LHG, ECF No. 316 at 24.

### D.    Factor 3: MSP's History Of Dilatoriness Is Beyond Dispute.

MSP's "pattern of dilatoriness" reinforces the need for sanctions. *Poulis*, 747 F.2d at 868. The Third Circuit has observed that "consistent tardiness in complying with court orders" is evidence of dilatoriness. *Adams*, 29 F.3d at 874. This Court has extended the substantial completion deadline ***seven times***, and MSP has not met any of those deadlines. As recently as May of this year, the Court anticipated that the parties would "start taking depositions in July" and "get fact discovery done [by]

August 30, 2024." Ex. 3, Apr. 18 Tr. at 35:13-16, 42:16-18. The parties remain

nowhere near those benchmarks because of MSP's failure to meet court-ordered

deadlines.

This is standard practice for MSP.[8] MSP's repeated delays go beyond what

courts have found sufficient under this factor. In *Ware Commc'ns, Inc. v. Rodale*

---

[8] *See*, *e.g.*, *Sanofi Aventis*, 2:18-cv-2211-BRM-LHG, ECF No. 316 at 4 ("[T]he [substantial completion] deadline has been extended five times. … Even now, nine months after the last deadline (April 25, 2022), four assignors say they still may have documents to produce."); *MSP Recovery Claims, Series LLC et al v. Markel Am. Ins. Co.*, 1:20-cv-24063-AMC (S.D. Fla. June 10, 2021), ECF No. 101 (denying MSP's request for an extension of time to conduct discovery because "[d]espite having almost three months to complete class certification discovery and raise any need for an enlargement with the Court, [MSP] waited until May 31, 2021, the deadline for the completion of discovery related to class certification, to request an extension of time."); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 6311987, at *9, *10 n.9 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021) ("[MSP's] request to amend [the. pleadings] was submitted almost a year beyond th[e corresponding] deadline … The Court also notes [MSP] stated [it] would 'soon be moving to incorporate' [three exemplars] into this case almost half a year before they moved to amend. While this particular lack of diligence did not cause them to miss the deadline for amendments—which had already passed when that statement was made—it makes [MSP's] protestations of diligence even less credible."); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2019 WL 1976454, at *5 (C.D. Cal. Mar. 28, 2019) (ruling on MSP's motion to extend the deadline for class certification and noting that "[MSP] fail[s] to demonstrate that [it is] without fault in creating the present 'crisis' requiring ex parte relief. … [and MSP] has [already] sought multiple extensions of the class certification deadline."); *MSP Recovery Claims, Series LLC v. Westfield Ins. Co.*, 1:17-cv-23961-CMA (S.D. Fla. Mar. 16, 2021), ECF No. 114 ("Contrary to [MSP's] insistence, the Court will not grant an extension of time where [MSP] expect[s] to file yet another extension-of-time request in 14 days; nor will it grant an open-ended extension of time as suggested by [MSP] in the Motion.").

25

*Press, Inc.*, for example, the court dismissed claims after plaintiffs engaged in "excessive discovery delays," including by failing to comply with just "*three* scheduling orders issued by this Court to accommodate discovery." 2002 WL 89604, at *4 (E.D. Pa. Jan. 23, 2002), *aff'd*, 322 F.3d 218 (3d Cir. 2003) (emphasis added).

Not only has MSP serially missed deadlines, but it has repeatedly ignored the Court's orders to explain and justify to the Court why it is missing them. MSP has *still* never filed any affidavits explaining its past non-compliance or attempting to justify its past extensions. MSP has simply "ignored multiple Court Orders … which demonstrates a pattern of non-compliance and dilatoriness." *Coco*, 2018 WL 6838760, at *2 (granting dismissal pursuant to Fed. R. Civ. P. 16(f)(1) and 37(b)(2)(A)). MSP's "consistent refusal to obey Court discovery Orders warrants dismissal." *Naik v. Bos. Consulting Grp.*, 2017 WL 424902, at *5 (D.N.J. Jan. 12, 2017); *Forchion v. Parrey*, 2021 WL 1390359, at *3 (D.N.J. Apr. 13, 2021) (dismissing with prejudice plaintiffs' claims for failure to comply with discovery deadlines in case management order); *Cross v. Adams*, 2013 WL 1719088, at *3 (D.N.J. Apr. 19, 2013) (dismissing case where Plaintiff missed multiple discovery deadlines contrary to court orders).

### E.   Factor 4: MSP's Discovery Misconduct Has Been Willful And In Bad Faith.

MSP has also engaged in willful violations of this Court's orders. "[A] consistent failure to obey orders of the court, 'at the very least, renders a party's

actions willful for the purposes of the fourth *Poulis* factor.'" *Solomon*, 2013 WL 3070884, at *5. The Court repeatedly provided clear direction at every status conference of MSP's obligations and the consequences of non-compliance. *See*, *e.g.*, Ex. 6, Nov. 13 Tr. at 18:20-23 (reminding MSP of the procedure for seeking an extension). MSP acknowledged that it understood the Court's instructions. *See*, *e.g.*, *id.* at 17:22–18:8 (MSP confirmed to the Court that it understood the Court's Order and was working toward the substantial completion deadline). Yet MSP continued to violate the Court's orders.

In *Rieu*, the court found bad faith when the plaintiff failed to obey discovery production deadlines after the court had "explicitly warned Plaintiff that failure to comply could result both in the Court directing Defendants to file relevant motions and in potential sanctions under Rule 16(f), which provides for dismissal of the action." *Rieu v. RVT Wrangleboro Consumer Square, LLC*, 2020 WL 6144731, at *3 (D.N.J. Oct. 20, 2020). The same is true here. This Court's waved-off warnings are "sufficient to demonstrate willfulness or bad faith" under the fourth *Poulis* factor. *Id.* The fact that "no excuse has been proffered for Plaintiff's failure to comply with court orders" "weighs in favor of the ultimate sanction of dismissal at this time." *Chiarulli*, 2010 WL 1371944, at *3; *see also Solomon*, 2013 WL 3070884, at *5 ("These Orders warned that failure to comply could result in the imposition of sanctions [and] Plaintiff has provided no justification for her continued failure to

27

comply. Therefore, the Court finds Plaintiff's non-compliance with the Court's Orders to be willful and intentional."); *Ware Commc'ns, Inc.*, 2002 WL 89604, at *5 ("Plaintiff's counsel has demonstrated bad faith in the instant case by ignoring Defendant's requests for discovery, by failing to comply with an Order of this Court, and by failing to abide to the terms of a Court-approved Stipulation.").

Even worse, MSP materially misrepresented its intent and ability to meet Court-ordered deadlines. MSP told the Court that it could or would substantially complete production by July 14,[9] then by September 27, then by November 25, then by December 6, 2024. *See supra* at 9-10, 12-13, and 13-14. Each of those claims was false. At the November 13 status conference, MSP revealed for the first time that it had been unable to access documents because they were password-protected. Ex. 6, Nov. 13 Tr. at 17:24–18:8 (disclosing that MSP had finally "received passwords from the ESI -- previous ESI vendor to unlock several of the documents that [had] already been categorized and produced in the" Insulin Litigation). The fact that MSP was only unlocking documents to prepare for review and production in ***November*** confirms there was no possible way it could have complied with earlier deadlines. Moreover, MSP finally confessed at the December 9 status conference that it "had no idea" if it "was going to be able to produce the documents, how [it] was going to

---

[9]    May 28, 2024 Letter from MSP, ECF No. 234.

be able to get access to them." Ex. 7, Dec. 9 Tr. at 5:6-9. That admission comes far too late, and only confirms MSP's non-compliance was "conscious and deliberate." *Zanes v. Flagship Resort Dev., LLC*, 2012 WL 602778, at *4 (D.N.J. Jan. 30, 2012) (failure to abide by court orders after receiving notice of the court's orders reflects "a conscious and deliberate decision not to comply.").

### F.    Factor 5: Sanctions Other Than Dismissal Would Be Ineffective.

Rule 37(b)(2)(A)(v) permits "dismissing the action or proceeding in whole or in part" as a remedy for failure to obey a discovery order. *Forchion*, 2021 WL 1390359, at *3. At this juncture, only dismissal will redress MSP's discovery misconduct. The alternative sanctions set forth in Rule 37(b)(2)(A) either lead to the same result or would be ineffective:

- There is no reason for the Court to direct certain facts "be taken as established" (subsection (i)), or prohibit MSP "from supporting or opposing designated claims or defenses" (subsection (ii)). Either of these approaches would result in precluding MSP from offering evidence relevant to the four Assignors at issue, which, in turn, would ultimately result in dismissal of all claims on behalf of those Assignors. *See Naik*, 2017 WL 424902, at *6 ("allowing the case to proceed but barring [plaintiff] from 'producing evidence on issues where she had impeded discovery would have resulted in a futile lawsuit, amounting to an effective dismissal of the case.'").

- Nor is "striking pleadings in whole or in part" (subsection (iii)) a viable option, because MSP relies on the same set of allegations for all of the assignors and Abbott is not seeking dismissal of all of the Assignors' claims. *See Hernandez v. Kaplan*, 2014 WL 197916, at *2 (D.N.J. Jan. 13, 2014) ("[T]he Court is unable to strike Plaintiffs['] complaint in accordance with Rule 37(b)(2)(A)(iii) because there is a third Plaintiff named in the complaint … who has complied with the Court's Pretrial Scheduling Order and is not the subject of Defendants['] motions.").

29

- Finally, the Court cannot "render[] a default judgment" (subsection (vi)) because Abbott has not asserted any counterclaims. *Id.*

- The only remaining alternatives are an order "staying further proceedings until the order is obeyed" (subsection (iv)), or holding plaintiffs in contempt (subsection (vii)). The Court has already tried the first approach, staying this action two months ago "pending Plaintiffs' substantial completion of ESI production." Oct. 22, 2024 Order, ECF No. 267. That stay continues to prove ineffective at ensuring MSP's compliance with this Court's orders. *See November Third Termination Assoc. v. Hoffman-La Roche, Inc.*, 2005 WL 8176159, at *3 (D.N.J. Apr. 27, 2005) ("Any further delay, such as a [stay] … would cause the defendants further prejudice."). Similarly, imposing a contempt order would do nothing to remedy the prejudice suffered by Abbott, which has complied with its obligations (allowing MSP now six months to prepare its defense), incurred legal fees associated with enforcing Court orders (and likely future contempt orders), and has "an interest in moving the case towards resolution." *Hernandez*, 2014 WL 197916, at *2.

Thus, dismissing the five non-compliant Assignors is the only appropriate sanction in light of MSP's persistent failure to abide by this Court's orders. *See Zanes*, 2012 WL 602778, at *4 (dismissing claims pursuant to Rule 37 because "the Court does not believe there is an available alternative sanction to obtain the requested discovery. It is apparent to the Court that plaintiffs have no intention of complying with the Court's discovery Orders."). And that is hardly a severe sanction given that MSP has already voluntarily dismissed 43 of the original 49 Assignors in the face of their inability to meet discovery obligations.

### G. Factor 6: MSP Has Not Produced Documents Showing That Any Of The Assignors' Claims Have Merit.

Finally, neither Abbott nor the Court can directly assess whether MSP's claims on behalf of EmblemHealth and ConnectiCare, Fallon, Network Health,

30

SummaCare, and HEAL are even remotely meritorious against Abbott because MSP failed to produce the documents necessary to assess their claims by the Court-imposed deadlines. "The purpose of discovery is to clarify whether a plaintiff's claims have merit," but MSP and its Assignors' discovery violations have substantially hindered Abbott's (and the Court's) efforts to answer that fundamental question. *Georges v. Ettline Foods Corp.*, 2017 WL 939018, at *3 (M.D. Pa. Feb. 21, 2017) (dismissing claim under Rule 37 where "[plaintiff's] own conduct [] makes this factor difficult to assess," even though the claim "survived the initial motion to dismiss"); *see also W. Coast Quartz Corp. v. M.E.C. Tech, Inc.*, 2017 WL 1944197, at *3 (D.N.J. May 9, 2017) ("Here, it is difficult to assess the final *Poulis* factor due to the Defendant's lack of participation in this matter. … Therefore, the sixth factor weighs in [] favor" of the party seeking Rule 37 sanctions); *Aronson v. Buy4Less Esales, Ltd.*, 2013 WL 5817070, at *3 (D.N.J. Oct. 11, 2013) (dismissing claims where "Plaintiffs' conduct has made adjudication of this case on the merits impossible").

The main guidepost we have on the merits of MSP's claims is the Insulin Litigation. The Special Master observed that "it has been increasingly evident during the course of ongoing discovery that [MSP's] initial theory of the case may not have been factually grounded. As assignor employees and assignor Rule 30(b)(6) witnesses have been deposed, those individuals have rendered testimony which

31

undermines the theory that there existed secret, fraudulent, or illegal 'kickbacks' which operated to the detriment of the third party payers." *Sanofi Aventis*, 2:18-cv-2211-BRM-LHG, ECF No. 416 at 26, *report and recommendation adopted*, ECF No. 425. The Court ultimately found that MSP recognized "well into the discovery process … that [its] cause of action [was] factually and legally weak." *Id.* at 27. MSP ultimately voluntarily dismissed that litigation. The same is true for this litigation, where MSP has copied the same allegations and refers to conduct in this case as the "Insulin Pricing Scheme." Am. Compl., ECF No. 173 ¶ 115. If there is any indication about the merits of MSP's claims regarding the Test Strips here, it is that the same claims failed related to insulin.

## CONCLUSION

MSP should not be allowed to routinely disobey Court orders, fail to comply with discovery obligations, and cause Abbott continued prejudice. All six *Poulis* factors support dismissing MSP's claims. Abbott respectfully requests that the Court dismiss with prejudice MSP's claims brought on behalf of the five Assignors that are the subject of this motion: (1) EmblemHealth Services Company, LLC and ConnectiCare, Inc.; (2) Fallon Community Health Plan, Inc.; (3) Network Health, Inc.; (4) SummaCare, Inc.; and (5) Health Alliance Medical Plans, Inc. (HEAL). Abbott also respectfully requests that this Court award reasonable attorneys' fees and costs incurred by Abbott related to issues raised in this motion.

Respectfully submitted,                    Dated:  December 20, 2024

/s/ *Robert E. Day*
Charles B. Casper                          Andrew A. Kassof, P.C. (*pro hac vice*)
Robert E. Day, III                         Brenton Rogers, P.C. (*pro hac vice*)
**MONTGOMERY McCRACKEN**                   Jason Feld (*pro hac vice*)
   **WALKER & RHOADS, LLP**  Keith Holt (*pro hac vice*)
LibertyView                                **KIRKLAND & ELLIS LLP**
457 Haddonfield Road, Suite 600            333 West Wolf Point Plaza
Cherry Hill, NJ 08002                      Chicago, IL 60654
(856) 488-7700                             (312) 862-2000

                                           John C. O'Quinn, P.C. (*pro hac vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           1301 Pennsylvania Avenue, N.W.
                                           Washington, DC 20004
                                           (202) 389-5000

                                           Xavier Avery (*pro hac vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           609 Main Street
                                           Houston, TX 77002
                                           (713) 836-3600

*Attorneys for Abbott Laboratories, Abbott Diabetes Care, Inc., and Abbott
Diabetes Care Sales Corporation*